# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DONALD LEE JAMES II,

        Defendant-Appellant.

UNPUBLISHED
January 21, 2016

No. 322890
Oakland Circuit Court
LC No. 2013-244357-FC

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JONATHAN DEWIG HICKERSON,

        Defendant-Appellant.

No. 322891
Oakland Circuit Court
LC No. 2013-244355-FC

Before: STEPHENS, P.J., and HOEKSTRA and SERVITTO, JJ.

PER CURIAM.

Defendants Donald Lee James II and Jonathan Dewig Hickerson were tried jointly, before separate juries. The juries convicted each defendant of first-degree felony murder, MCL 750.316(1)(b), assault with intent to commit murder, MCL 750.83, first-degree home invasion, MCL 750.110a(2), and three counts of possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant James, a juvenile, to concurrent prison terms of 40 to 60 years for the felony-murder conviction, 23 to 50 years for the assault conviction, and 11 to 20 years for the home invasion conviction, to be served consecutive to three concurrent two-year terms of imprisonment for the felony-firearm convictions. The trial court sentenced defendant Hickerson, also a juvenile, to life imprisonment without parole for the felony-murder conviction, and concurrent prison terms of 23 to 50 years for the assault conviction and 11 to 20 years for the home invasion conviction, with those sentences to be served consecutive to three concurrent two-year terms of imprisonment for the felony-firearm convictions. Defendant James appeals as of right in Docket No. 322890, and defendant Hickerson appeals as of right in Docket No. 322891. We affirm each defendant's convictions,

-1-

but vacate the life-without-parole sentence for defendant Hickerson's first-degree felony murder conviction and remand for resentencing on that offense.

## I. DOCKET NO. 322890

Defendant James argues that the evidence was insufficient to identify him as a participant in the charged crimes, which took place at 839 Inglewood in Pontiac during the early morning hours of October 22, 2012. Defendant James specifically contends that Anthony Herald, a witness who participated in planning the home invasion, lacked credibility, as did Rachel Thomas, a witness who spoke with defendant James shortly after the crimes were committed.

We review de novo a criminal defendant's challenge to the sufficiency of the evidence supporting his convictions. *People v Harverson*, 291 Mich App 171, 175-177; 804 NW2d 757 (2010); *People v Solmonson*, 261 Mich App 657, 661; 683 NW2d 761 (2004). In deciding whether sufficient evidence exists " 'to sustain a conviction, a court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.' " *People v Nowack*, 462 Mich 392, 399-400; 614 NW2d 78 (2000) citing *People v. Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992). As the Supreme Court explained in *Nowack*:

> The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict. The scope of review is the same whether the evidence is direct or circumstantial. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime. [*Id*. at 400 (internal quotation marks and citation omitted).]

"It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002).

The prosecutor must prove an accused person's identity as the perpetrator of a charged offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008); *People v Kern*, 6 Mich App 406, 409; 149 NW2d 216 (1967). The prosecutor's "duty to identify the accused is an element of his general duty to prove [a] defendant's guilt beyond a reasonable doubt." *Kern*, 6 Mich App at 409. The prosecutor may introduce "either direct testimony or circumstantial evidence" to prove a "defendant's connection with the alleged offense." *Id*. at 409-410.

Defendant James argues that there is insufficient evidence to place him at the scene of the home invasion and assault. To support his assertion he makes several arguments. First, he challenges Herald's credibility as a witness because he made statements at the preliminary examination that were inconsistent with his trial testimony. He also argues that Thomas's trial testimony was incredible because it contradicted an earlier statement she gave the police. He also points to the fact that the DNA evidence does not pinpoint when he came in contact with the ski-mask or how it came to be in the crime scene alley. Additionally, he highlights that none of the victims of the crime made a clear identification.

We disagree that there was insufficient evidence to place defendant James at the crime scene as a planner and active participant in the mayhem and carnage of that evening. In reviewing the evidence presented to the jury, we are reminded that the jury was free to believe all, none, or some of the testimony of each and every witness at the trial. While Herald admitted lying and gave inconsistent versions of the events, some of his testimony was supported by independent physical evidence such as the location of the weapon. Thomas gave inconsistent testimony, however, her testimony that James appeared at her home within minutes of the offenses with details about one of the assailants being shot, was supported by another witness, Muholland. The evidence that supported defendant James's identity included the victim's testimony regarding the number of perpetrators, their weaponry and clothing. A weapon was found near the crime scene the next day that contained significant DNA markers linked to James.

Viewed in a light most favorable to the prosecution, the evidence and reasonable inferences derived from the evidence were sufficient to prove beyond a reasonable doubt defendant James's identity as a participant in the charged crimes. We note that defendant James presented the same attack on the credibility of Herald and Thomas at trial that he raises on appeal. His jury considered and rejected these attacks on Herald's and Thomas's credibility. Defendant James has identified no basis for this Court to revisit the jury's weighing of the evidence.

## II. DOCKET NO. 322891

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant Hickerson contests the effectiveness of his trial counsel in conceding his guilt by admitting that he possessed a firearm, committed a home invasion, and could be found guilty of second-degree murder. He avers that these concessions proved his guilt of first-degree felony murder, the most serious charge against him. Defendant Hickerson did not seek an evidentiary hearing in the trial court on the basis of alleged ineffective assistance of counsel. Consequently, we limit our "review of the relevant facts . . . to mistakes apparent on the record." *People v Riley (After Remand)*, 468 Mich 135, 139; 659 NW2d 611 (2003).

Whether a defendant has received the effective assistance of counsel is a mixed question of fact and law. *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). In *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984), the United States Supreme Court held that a convicted defendant's claim of ineffective assistance of counsel includes two components: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." To establish the first component, a defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Solmonson*, 261 Mich App at 663. With respect to the prejudice aspect of the test for ineffective assistance, the defendant must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceedings would have differed. *Id*. at 663-664. The defendant must overcome the strong presumptions that his "counsel's conduct falls within the wide range of professional assistance," and that his counsel's actions represented sound trial strategy. *Strickland*, 466 US at 689; see also *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). An appellate court cannot "substitute [its] judgment for that of counsel on matters of trial strategy, nor will [it]

use the benefit of hindsight when assessing counsel's competence." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

In *People v Walker*, 167 Mich App 377, 382; 422 NW2d 8 (1988), overruled in part on other grounds in *People v Mitchell*, 456 Mich 693, 698; 575 NW2d 283 (1998), this Court observed:

> It is well established that arguing that defendant is guilty of an offense is not necessarily ineffective assistance of counsel. In *People v Savoie*, 419 Mich 118; 349 NW2d 139 (1984), defense counsel argued that defendant shot a police officer, but was too intoxicated at the time to form the necessary intent for first-degree murder. In *People v Wise*, 134 Mich App 82; 351 NW2d 255 (1984), defense counsel argued that defendant was guilty of conspiracy and breaking and entering but was innocent of other charges. In both cases, it was held that there was no ineffective assistance of counsel. *Where the evidence obviously points to defendant's guilt, it can be better tactically to admit to the guilt and assert a defense or admit to guilt on some charges but maintain innocence on others. Such a trial tactic may actually improve defendant's credibility and will not be second-guessed.*

> In the present case, it is reasonable to conclude from the record before us that defense counsel employed the accepted trial strategy of admitting guilt to a lesser offense. Such a trial strategy is not second-guessed. Therefore, defendant was not denied effective assistance of counsel . . . . [Emphasis added.]

See also *People v Matuszak*, 263 Mich App 42, 60-61; 687 NW2d 342 (2004).

Here, defense counsel reasonably disputed defendant Hickerson's guilt of two of the six charges, assault with intent to commit murder and the related felony-firearm count, by arguing, albeit unsuccessfully, that defendant Hickerson never intended to kill either David or Brian Contreras, who had shot at defendants. Defense counsel also explained his view that the record did not establish that defendant Hickerson intended to kill Adrian Contreras, intended to inflict great bodily harm on Adrian Contreras, or acted with reckless disregard that he might inflict great bodily harm on Adrian Contreras. However, defense counsel suggested that if the jury wished to punish defendant Hickerson, it could convict him of second-degree murder, instead of the more serious first-degree felony murder charge. We view as a reasonable trial strategy defense counsel's focus on the lack of direct evidence that defendant Hickerson intended to kill anyone inside 839 Inglewood, irrespective that a second-degree murder during a home invasion qualifies as a first-degree felony murder. MCL 750.316(1)(b). We conclude that defense counsel reasonably suggested that the jury should ignore the most serious charge of first-degree felony murder and acquit defendant Hickerson of the assault and one felony-firearm count.

Even assuming that defense counsel chose an objectively unreasonable strategy in conceding defendant Hickerson's guilt during closing argument, defendant Hickerson has not proven any resultant prejudice. The evidence overwhelmingly established defendant Hickerson's guilt of all the charged crimes. The jury credited Herald's testimony regarding Hickerson's role in planning the offenses. The victims identified the number, weaponry and

-4-

clothing worn of their assailants. Hickerson was arrested contemporaneously to the crimes in the backyard of the invaded home all the while possessing an assault rifle and a black ski mask. Both the weapon and the clothing were consistent with the victim's testimony and other forensic evidence. In light of the abundant evidence supporting defendant Hickerson's convictions, we detect no reasonable likelihood that the closing argument altered the outcome of the trial.

## B. SENTENCE CHALLENGE

Defendant Hickerson, who was 17 years old when he committed these crimes, lastly argues that in sentencing him to life without parole, the trial court failed to properly weigh his potential for rehabilitation under *Miller v Alabama*, 576 US ___; 132 S Ct 2455; 183 L Ed 2d 407 (2012), as codified in MCL 769.25(6). Defendant Hickerson further argues in a supplemental brief that the sentencing procedure employed by the trial court violated his Sixth Amendment right to a jury determination of the statutory factors necessary to support a life-without-parole sentence. Questions concerning the constitutionality of a trial court's sentence of a juvenile offender and questions of statutory interpretation are reviewed de novo. *People v Skinner*, ___ Mich App ___; ___ NW2d ___ (2015) (Docket No. 317892), lv pending; slip op at 3.

In light of this Court's recent decision in *Skinner*, we agree that the trial court employed an unlawful procedure in sentencing defendant Hickerson to life in prison without parole. In *Skinner*, ___ Mich App ___, the trial court sentenced the juvenile defendant to life without parole pursuant to MCL 769.25, and this Court addressed the defendant's contention that "the Sixth Amendment mandates that a jury make the findings set forth by [*Miller*, ___ US ___; 132 S Ct 2455] as codified in MCL 769.25(6)." This Court reasoned, in relevant part, as follows:

> . . . MCL 769.25 contains provisions that establish a default term-of-years prison sentence for a juvenile convicted of first-degree murder. . . .
>
> Stated differently, at the point of conviction, absent a motion by the prosecution and without additional findings on the *Miller* factors, the maximum punishment that a trial court may impose upon a juvenile convicted of first-degree murder is a term-of-years prison sentence. . . . Thus, following her jury conviction, defendant was subject to a term-of-years prison sentence. Once the prosecuting attorney filed a motion to impose a life-without-parole sentence, defendant was exposed to a potentially harsher penalty contingent on findings made by the trial court. This violated defendant's right to a jury determination that she is guilty of every element of the crime with which she is charged, beyond a reasonable doubt, . . . because other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.
>
> * * *
>
> Clearly, the findings mandated by MCL 769.25(6) exposed defendant to a greater punishment than that authorized by the jury's guilty verdict; the findings therefore acted as the functional equivalent of elements of a greater offense that

-5-

were required to be proved to a jury beyond a reasonable doubt. Enhanced punishment under MCL 769.25 is not based merely on defendant's prior convictions, on facts admitted by defendant, or on facts that are part and parcel to the elements that were submitted to the jury during the guilt-phase of the proceeding. Rather . . . , the state threatened defendant with certain pains—i.e. a term of years sentence—following her jury conviction of first-degree murder and with additional pains—i.e. life without parole—following additional findings by the trial court. . . . The effect of MCL 769.25 plainly subjects defendant to harsher punishment based on judicially found facts in contravention of the Sixth Amendment. [*Skinner*, ___ Mich App at ___; slip op at 14-15 (internal quotations and citations omitted).]

This Court in *Skinner* held that "because defendant's sentence for first-degree murder was imposed in a manner that violated the Sixth Amendment, she is entitled to resentencing on that offense." *Id*. at ___; slip op at 22 (emphasis added). This Court further held:

> [*F*]ollowing a conviction of first-degree murder and a motion by the prosecuting attorney for a life without parole sentence, absent defendant's waiver, the court should impanel a jury and hold a sentencing hearing where the prosecution is tasked with proving that the factors in Miller support that the juvenile's offense reflects "irreparable corruption" beyond a reasonable doubt. During this hearing, both sides must be afforded the opportunity to present relevant evidence and each victim must be afforded the opportunity to offer testimony in accord with MCL 769.25(8). Following the close of proofs, the trial court should instruct the jury that it must consider, whether in light of the factors set forth in *Miller* and any other relevant evidence, the defendant's offense reflects irreparable corruption beyond a reasonable doubt sufficient to impose a sentence of life without parole. Alternatively, if the jury decides this question in the negative, then the court should use its discretion to sentence the juvenile to a term-of-years in accord with MCL 769.25(9).
>
> . . . Accordingly, in this case, *because defendant was denied her right to have a jury make the requisite findings under MCL 769.25, she is entitled to resentencing on her first-degree murder conviction.* [*Id*. at ___; slip op at 23 (emphasis added).]

Defendant Hickerson did not raise before the trial court a request for a jury determination of the facts supporting the sentence of life without parole that the prosecutor requested. Therefore, defendant Hickerson failed to preserve a claim regarding his right to a jury determination, which we review only to ascertain whether any plain error affected his substantial rights. *People v Carruthers*, 301 Mich App 590, 611-612; 837 NW2d 16 (2013).

This Court's decision in *Skinner* changed the criminal procedure for juvenile defendants facing potential imprisonment of life without parole. The changes in the methodology that this Court in *Skinner* imposed on juvenile sentencing pursuant to MCL 769.25 represent "changes to a criminal law," which generally receive "retrospective application to cases pending on appeal as of the date of the filing of the opinion containing the new rule." *Carruthers*, 301 Mich App at

615. Because *Skinner* significantly altered the constitutionality of the process by which the trial court sentenced defendant Hickerson to life without parole, and no indication exists that defendant Hickerson waived his right to a jury determination of the facts justifying a sentence of life without parole, *People v Cook,* 285 Mich App 420, 422, 427; 776 NW2d 164 (2009), citing MCL 763.3 and MCR 6.401, we conclude that defendant Hickerson has demonstrated plain error necessitating resentencing. *Id.* Accordingly, we vacate defendant Hickerson's life-without-parole sentence for his first-degree murder conviction and remand for resentencing on that offense consistent with *Skinner.*

In Docket No. 322890, we affirm defendant James's convictions.

In Docket No. 322891, we affirm defendant Hickerson's convictions, but vacate his life-without-parole sentence for first-degree felony murder and remand for resentencing on that offense consistent with this opinion. We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ Joel P. Hoekstra
/s/ Deborah A. Servitto